IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | CV 20-24-BLG-TJC |
| Plaintiff/Counterclaim Defendant, | **ORDER** |
| vs. | |
| MATTHEW GRIESHOP, JOSHUA ADAM DELAVAN, and KATE SARAH DELAVAN, | |
| Defendants/Counterclaim Plaintiffs. | |

Safeco Insurance Company of America ("Safeco") brings this action for

declaratory relief under 28 U.S.C. § 2201 against Matthew Grieshop ("Grieshop")

and Joshua Adam Delavan and Kate Sarah Delavan (the "Delavans") (collectively,

"Defendants"), seeking judgment on its duty to defend or indemnify Grieshop in a

lawsuit brought by the Delavans in state district court.  (Doc. 15.)  Safeco also

seeks to recoup defense fees and costs paid on Grieshop's behalf in the underlying

suit.  (*Id.*)

Before the Court are Safeco's Motion for Summary Judgment (Doc. 17),

Grieshop's Cross Motion for Summary Judgment (Doc. 38), the Delavans' Cross

Motion for Summary Judgment (Doc. 45), the Delavans' Motion to Stay

Proceedings (Doc. 57), and Grieshop's Unopposed Motion to Approve Overlength Brief (Doc. 65). The motions are fully briefed and ripe for the Court's review.

## I.   FACTUAL BACKGROUND[1]

Grieshop began building a house in Red Lodge, Montana in 2011 and finished in 2012. In 2015 and 2016, Grieshop modified the house, adding some rooms. Safeco insured Grieshop's property under two policies between 2014 and 2020: Homeowners Policy No. OM2490005 between December 17, 2014 and June 6, 2019, and Umbrella Policy No. UM2673979 between November 2, 2017 and November 2, 2020 (collectively, "Policies").

Grieshop decided to sell the house in 2019. He hired a real estate broker and executed a Property Disclosure Statement on April 19, 2019. The Delavans made an offer and entered into a Buy-Sell Agreement with Grieshop on April 27. The Delavans had the house inspected and advised Grieshop of some needed repairs. After the repairs were complete, the parties closed on the sale in June 2019.

On September 12, 2019, the Delavans filed suit against Grieshop in the Montana Twenty-Second Judicial District Court, Carbon County, Cause No. DV-19-87 (the "Underlying Lawsuit"). The Delavans allege Grieshop caused damage to the trusses of the residence when he modified a portion of the home to

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment, are taken from the parties' submissions, and are undisputed unless otherwise indicated.

accommodate additional living space, and he failed to disclose the modifications and/or damages during the home's sale.  (*See* Doc. 1-1.)

Grieshop tendered the lawsuit to Safeco for defense and indemnification in October 2019.  Safeco replied on November 20, 2019, explaining it would provide a defense under a reservation of rights, with the possibility of withdrawal and/or pursue a declaratory judgment action on its duty to defend or indemnify, as well as seek reimbursement for defense costs.  Safeco followed up on January 2, 2020, stating its reasons why it believed there was no coverage for the Underlying Lawsuit and urged Grieshop to consult with an attorney.  Safeco again cautioned that Grieshop may be required to repay Safeco for defense costs.  Grieshop and Safeco further disputed each other's respective coverage positions in a series of communications between January and March 2020.  During that exchange, Safeco gave Grieshop notice of its intention to file the instant declaratory action, and ultimately filed suit in this Court on March 16, 2020.  (Doc. 1.)

Thereafter, both Grieshop and the Delavans filed counterclaims against Safeco.  (Docs. 8, 9.)  Grieshop asserts counterclaims for unfair claims settlement practices, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  (Doc. 8 at 12-14.) The Delavans seek a declaration that the Policies provide coverage for the claims they allege in the Underlying Lawsuit. (Doc. 9 at 16-19.)

In July 2020, the Delavans amended their complaint in the Underlying Lawsuit, supplanting claims for negligent misrepresentation (Count II) and fraud (Count III) with claims for negligence-failure to disclose and continuing nuisance, respectively. (*Cf.* Docs. 1-1, 15-1.)

Safeco subsequently sent Grieshop its updated coverage position addressing the Delavans' amended complaint and additional allegations. Safeco informed Grieshop it would continue to defend him in the Underlying Lawsuit subject to its reservation of rights but cautioned it would maintain this action for declaratory judgment on its duty to defend and indemnify under the Policies.

## II.   LEGAL STANDARDS

### A.   Summary Judgment

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable factfinder to return a verdict for the nonmoving party. *Id*. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

4

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party fails to discharge this initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. See,

*Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. When parties file cross-motions for summary judgment, the Court reviews each motion on its own merits. *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

### B.    Montana Insurance Law

The Court's jurisdiction over this action is based on diversity of citizenship. Thus, the Court must apply the substantive law of Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (2014).

It is well-settled in Montana that an insurer's duty to defend is independent from and broader than its duty to indemnify. *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). The "duty to defend arises when a complaint against an insured alleges facts, which if proved, would result in coverage." *Tidyman's Mgmt. Services, Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) citing *Staples*, 90 P.3d at 385 (Mont. 2004); *State Farm Mut. Auto. Ins. Co.*

*v. Freyer*, 312 P.3d 403, 410-11 (Mont. 2013).  Whereas, the duty to indemnify "arises only if coverage under the policy is actually established."  *Freyer*, 312 P.3d at 410-11.

The determination of whether an insurer has a duty to defend is made by comparing the factual allegations in the complaint to the coverage afforded under the policy.  *Graber v. State Farm Fire & Cas. Co.*, 797 P.2d 214, 217 (Mont. 1990); *Staples*, 90 P.3d at 385.  In comparing allegations of liability with policy language "to determine whether the insurer's obligation to defend was 'triggered,' a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated."  *Staples*, 90 P.3d at 385.  The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, require coverage exclusions to be narrowly construed.  *Id*.  Therefore, the insurer must "construe the factual assertions from the perspective of the insured."  *Id.*  "Where a claim falls unequivocally outside the policy's coverage, however, there is nothing for the court to construe, and no reason to impose a duty to defend."  *Twite Fam. P'ship v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1160 (Mont. 2008).  Accordingly, the insurer has a duty to defend unless there is an "unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage."  *Staples*, 90 P.3d at 385.

Because the duty to defend is more extensive than the duty to indemnify, resolution of the issue of the duty to defend can also determine the indemnity issue. The Montana Supreme Court has noted that "[w]here there is no duty to defend, it follows that there can be no duty to indemnify." *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 364 (Mont. 2005).  See also, *Farmers Ins. Exch. v. Wessel*, 477 P.3d 1101, 1106-07 (Mont. 2020).  Thus, "a finding that there is no duty to defend necessarily compels the finding that there is no duty to indemnify." *Nat'l Surety Corp. v. Mack*, 2016 WL 590453, *2 (D. Mont. Feb. 11, 2016).

A court interpreting an insurance policy is to read the policy as a whole and, to the extent possible, reconcile the policy's various parts to give each meaning and effect.  *O'Connell v. Liberty Mut. Fire Ins. Co.*, 43 F.Supp.3d 1093, 1096 (D. Mont. 2014) (*citing Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021 (Mont. 2008)).  The terms and words used in an insurance policy are to be given their usual meaning and construed using common sense. *Hardy v. Progressive Specialty Ins. Co.*, 112, 67 P.3d 892, 896 (Mont. 2003).  Any ambiguities in the insurance contract are construed against the insurer and in favor of extending coverage.  *Revelation Indus., Inc. v. St. Paul Fire & Marine Ins. Co.*, 206 P.3d 919, 929 (Mont. 2009).  "An ambiguity exists when the policy, taken as a whole, is reasonably susceptible to two different interpretations." *Heggem v. Capitol Indem. Corp.*, 154 P.3d 1189, 1193 (Mont. 2007).  But, a court should not

8

"seize upon certain and definite covenants expressed in plain English with violent hands and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005). Moreover, "a court may not create an ambiguity where none exists, nor may a court rewrite an insurance policy by ignoring clear and unambiguous language to accomplish a 'good purpose.'" *Heggem*, 154 P.3d at 1193.

## III.   DISCUSSION

Safeco moves for summary judgment on its duty to defend and indemnify Grieshop. (Doc. 17.) Safeco first argues it has no duty to defend or indemnify Grieshop because the "real estate sale" and "owned property" exclusions under the Policies unambiguously bar coverage for the Delavans' claims in the Underlying Lawsuit. (Doc. 18 at 13.) Second, Safeco asserts that because there is no duty to defend, it is entitled to recoup defense costs expended on Grieshop's behalf. (*Id.* at 22.) Third, Safeco argues it is entitled to summary judgment on Grieshop's counterclaims. (*Id.* at 24.)

Grieshop opposes Safeco's motion and moves for summary judgment on Safeco's duty to defend. (Docs. 36, 39.) Grieshop argues he is entitled to a defense from Safeco under the Defense Coverage provision of the Umbrella Policy. (Doc. 39 at 4.)

The Delavans likewise oppose Safeco's motion, and seek summary judgment.  (Docs. 45, 46.)  The Delavans first contend Safeco's claim for declaratory judgment should be dismissed because the duty to indemnify issue is premature.  (Doc. 46 at 7.)  Alternatively, they argue that if the Court reaches the issue of indemnity, there is coverage under the Policies, and the exclusions cited by Safeco do not apply.  (*Id.* at 20.)  The Delavans have also requested the Court stay this action pending resolution of the Underlying Lawsuit.  (Doc. 57.)

The Court will address each of these issues in turn.

## A.    Policy Exclusions

### 1.    Real Estate Sale Exclusion

Safeco argues that the Policies' "real estate sale" exclusion clearly and unambiguously bars Personal Liability Coverage because the Underlying Lawsuit stems from the Delavans' purchase of Grieshop's real property.  (Doc. 18 at 14.) In support, Safeco relies on *Huckins v. United Servs. Auto. Ass'n*, 396 P.3d 121, 127 (Mont. 2017), where a similar real estate sale exclusion was found to unambiguously bar coverage for an insured's failure to disclose information in a real estate transaction.  (*Id.* at 15-16.)

Grieshop counters that Safeco has a duty to defend under the Defense Coverage provision of the Umbrella Policy.  (Doc. 36 at 10.)  He asserts a claim for Defense Coverage does not involve a claim for "bodily injury, personal injury,

10

or property damage" to which the real estate sale exclusion applies.  (*Id*.)  Grieshop further argues the real estate sale exclusion's use of the term "arising out of" is inherently ambiguous under Montana law, citing to *Newman v. United Fire & Cas. Co.*, 995 F.Supp.2d. 1125 (D. Mont. 2014).  (*Id.* at 11.)  Last, Grieshop asserts that under the merger doctrine set forth in *Urquhart v. Teller*, 958 P.2d 714 (Mont. 1998), the Buy-Sell Agreement was legally extinguished and precludes using the real estate sale exclusion to deny indemnification under either Policy.  (*Id.*)

The Delavans contend the real estate sale exclusion is not applicable for three reasons: first, it is premature to adjudicate the issue of coverage because the issue of whether there are "defects" from Grieshop's renovations is disputed in the Underlying Lawsuit; second, the term "arising out of," as used in the "real estate sale" exclusion, is ambiguous and should be construed against Safeco; and third, the facts giving rise to the Delavans' claims against Grieshop occurred prior to their purchase of his home and continue to occur, thus their damages do not necessarily arise out of the Buy-Sell Agreement.  (Doc. 46 at 11-20.)

The Court begins its analysis of Safeco's duty to defend by looking "first to the terms of the policy, and next to the facts alleged [in the] complaint."  *Huckins*, 396 P.3d at 124 (quoting *Landa v. Assurance Co. of Am.*, 307 P.3d 284 (Mont. 2013)).

11

The Homeowners Policy provides Personal Liability Coverage, in relevant part, as follows:

COVERAGE E – PERSONAL LIABILITY

If a claim is made or a suit is brought against any **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will:

1.  pay up to our limit of liability for the damages for which the **insured** is legally liable; and
2.  provide a defense at our expense by counsel of our choice . . .

(Doc. 19-2 at 29. [2]) (Emphasis in original.)

The Homeowners Policy then goes on to set out several exclusions from Personal Liability Coverage.  (*Id.* at 29-33.)  In particular, the Homeowners Policy provides:

**Coverage E – Personal Liability** does not apply to:

(3)  liability arising out of any written or oral agreement for the sale or transfer of real property, including but not limited to liability for:

(a) known or unknown property or structural defects . . . [or] . . .

(d) concealment or misrepresentation of any known defects.

(*Id.* at 32.)

---

[2] The language of Coverage E does not change from policy period to policy period between 2014 and 2019.  (*See* Docs. 19-2 - 19-5.)  The Court, therefore, cites to Doc. 19-2 as representative of the applicable Homeowners Policies.

The Umbrella Policy contains a similar "real estate sale" exclusion.  The Umbrella Policy provides:

> This policy does not apply to any:
> . . .
>
> 5.   **bodily injury**, **personal injury**, or **property damage**:
>
>> f.  arising out of a written or oral agreement for the sale or transfer of real property, including but not limited to liability for:
>>
>>> (1) known or unknown property or structural defects . . . [or] . . .
>>>
>>> (4) concealment or misrepresentation of any known defects, including but not limited to fungi, wet or dry rot, or bacteria.

(Doc. 19-6 at 17.[3])

Therefore, the plain language of the Policies unambiguously exclude coverage for claims that arise out of written or oral agreements for the sale or transfer of real property, including but not limited to, liability for known or unknown property or structural defects and concealment or misrepresentation of known defects.

As for the facts alleged in the Second Amended Complaint in the Underlying Action, the Delavan's allege that Grieshop modified the home to accommodate additional living space.  (Doc. 15-1 at ¶ 9.)  In doing so, the

---

[3] The language of the relevant exclusions under the Umbrella Policy does not change from policy period to policy period between 2017 and 2019.  (*See* Docs. 19-6 - 19-8.)  The Court, therefore, cites to Docs. 19-6 as representative of the applicable Umbrella Policies.

Delavans allege that engineered trusses were modified, which caused physical damage to the trusses and premises.  (*Id.* at ¶¶ 10, 11.)  The Delavans further state that Grieshop listed the property for sale, and the Delavans submitted an offer to purchase the property, which was "contingent upon [Grieshop] disclosing the property disclosure statement within 5 days of his acceptance of the offer."  (*Id.* at ¶ 14.)  The parties ultimately entered into a Buy-Sell Agreement and closed on the home in June 2019.  (*Id.* at ¶¶ 15, 17.)  After moving into the home, the Delavans allege that they became aware that the trusses had been modified and were damaged.  (*Id.* at ¶¶ 22, 24.)  The Delavans further allege that Grieshop failed to advise them that the trusses had been damaged.  (*Id.* at ¶26.).  Therefore, the Delavans' claims are premised on Grieshop's modification of the trusses, and his failure to advise them of the alleged damage to the trusses prior to the sale of the home in 2019.

The Delavans go on to state nine causes of action against Grieshop: negligence-property damage (Count I), negligence-failure to disclose (Count II), continuing nuisance (Count III), constructive fraud (Count IV), negligent infliction of emotional distress (Count V), breach of contract (count VI) , breach of the implied covenant of good faith and fair dealing (Count VII), attorney fees (Count VIII), and recission (Count IX).  (Doc. 19-1 at ¶¶ 29-84.)  Nevertheless, the underlying factual basis for all the claims is the same: Grieshop's modification of

the trusses and the sale of the property from Grieshop to Delavans.

While all claims arguably fall within the real estate sale exclusion, the Court finds that the claims set forth in Counts II, IV, VI, VII, VIII, and IX unequivocally fall within the exclusion.  For each of those claims, the allegations in the Second Amended Complaint in the Underlying Lawsuit relate directly to the sale of Grieshop's property to the Delavans.

For example, Count II – Negligent Failure to Disclosure – alleges that Grieshop owed the Delavans "a duty to disclose all material adverse facts with respect to the home that they had listed for sale," and failed to do so.  (*Id.* at ¶ 36.) Thus, Grieshop's alleged duty and breach of that duty relate directly to the sale of the home.

Similarly, Count IV – Constructive Fraud – is expressly based on Grieshop's alleged duty to the Delavans to disclose the damage to the trusses "so that [the Delavans] could make an educated decision as to whether or not to purchase the home."  (*Id.* at ¶ 50.)

Counts VI - IX are likewise explicitly based on the Buy-Sell Agreement for the sale of the home.  Count VI alleges breach of the purchase agreement for failing to disclose material adverse facts and defects with respect to the home.  (*Id.* at ¶¶ 61-62.)  Count VII alleges breach of the implied covenant of good faith and fair dealing for lack of honesty by taking advantage of Delavans "as

unsophisticated homebuyers and fail[ing] to disclose adverse material facts and defects with respect to the home." (*Id.* at ¶ 70.) Count VIII seeks attorney fees because "[t]he contract (the Buy-Sell Agreement) at issue in this case allows the prevailing party to recover their reasonable attorneys' fees and costs." (*Id.* at ¶ 77.) Finally, Count IX seeks rescission of the Buy-Sell Agreement because the Delavans allege they gave consent based on Grieshop's fraud, mistake of facts, and misrepresentations. (*Id.* at ¶¶ 77-84.)

Therefore, since all these claims are clearly based on the sale of the property from Grieshop to the Delavans, the Court finds that the claims are unequivocally excluded by the real estate sale exclusion. The Defendants' arguments to the contrary are not persuasive.

As noted above, both Grieshop and the Delavans argue that the phrase "arising out of" in the real estate sale exclusion is ambiguous. They therefore contend the term must be construed against Safeco and in favor of extending coverage. "An ambiguity exists where the contract, when taken as a whole, is reasonably subject to two different interpretations." *Hardy*, 67 P.3d at 896; *Crow*, 2013 WL 989822, at *2. But neither Grieshop nor the Delavans proffer a reasonable, different interpretation of the language in the Policies. Rather, they argue the term "arising out of" has been found to be ambiguous in other contexts. The Court finds this is insufficient to raise an ambiguity in this case.

Grieshop's reliance on *Newman*, for example, ignores the fact that the court did not actually determine the phrase "arising out of" was ambiguous. Rather, the court discussed the phrase in the context of a potential conflict of law issue in the case. *Newman*, 995 F. Supp. 2d at 1130. The plaintiff argued that under Montana law the term was ambiguous, and the court should apply Montana law, while the defendant-insurer argued the term was unambiguous under Utah law and Utah law should be applied. *Id.* at 1129-30. The Court ultimately concluded that under either interpretation the result of the case would be the same but did not actually address whether the term was ambiguous. *Id.* at 1130.

The Delavans' reliance on *Pablo v. Moore*, 995 P.2d 460 (Mont. 2000), is similarly inapplicable. In *Pablo*, the Montana Supreme Court discussed whether the term "arising out of" was ambiguous in the context of a general commercial liability policy's exclusion for "the ownership, maintenance, use or entrustment to other of any … auto." *Pablo*, 995 P.2d at 461. The insured and a third party were injured in a car accident and argued that the exclusion didn't apply because the accident didn't "arise out of" ownership, maintenance, use or entrustment of an auto, but from negligent acts instead. *Id.* The district court found the term ambiguous in the context of the policy and facts at issue in that case, and the Montana Supreme Court agreed because both parties offered and argued alternative interpretations. *Id.* at 462-463 ("The phrase is reasonably subject to

17

more than one interpretation. … demonstrated by the split of authority, described in the parties' briefs and the District Court's findings, conclusions, and order, on the meaning of the words 'arising out of' in exclusionary clauses relating to the use of motor vehicles.").

In contrast, in *Huckins*, the Montana Supreme Court enforced a similar real estate transaction exclusion based on claims "arising out of" the transaction.  The exclusion in *Huckins* barred coverage for "'bodily injury' or 'property damage' *arising out of* your failure, intentionally or unintentionally, to disclose information regarding the sale or transfer of real or personal property."  *Huckins*, 396 P.3d at 125 (emphasis added).  The Court found the exclusion unambiguously excluded coverage for claims against the insured that were based on the insured's failure to disclose defects in property sold to the underlying plaintiffs.  *Id.*  As a result, the Court determined the insurer had no duty to defend the insured.  *Id.*

Here, neither Grieshop nor the Delavans offer an alternative reasonable interpretation of the phrase "arising out of," nor do they cite to any authority demonstrating the term is ambiguous in the context of a similar real estate sale exclusion.  Accordingly, the Court does not find the real estate sale exclusion is ambiguous.

Grieshop next argues the real estate sale exclusion is not applicable because the Buy-Sell Agreement was legally extinguished pursuant to the real estate merger

18

doctrine set forth in *Urquhart v. Teller*, 958 P.2d 714 (Mont. 1998). *Urquhart* is

inapposite.  In *Urquhart*, the Montana Supreme Court applied the merger doctrine

to a dispute over whether covenants contained in a contract for deed merged into a

warranty deed after the contract was paid off and the warranty deed was released

from escrow and recorded.  *Urquhart*, 958 P.2d at 716, 719.  The Court held the

covenants were not enforceable because the contract for deed was merged with and

extinguished by the warranty deed.  *Id.* at 719-720.  Even assuming *Urquhart* has

some relevance to the Underlying Lawsuit, it has nothing to do with the application

of an insurance policy's real estate sale exclusion.  Grieshop offers no convincing

argument to the contrary.

The Delavans further argue there is a disputed issue of fact in the Underlying

Lawsuit regarding whether the truss alterations are "defects" that trigger the real

estate sale exclusion.  As a result, the Delavans assert the issue of coverage is not

justiciable at this stage.  The real estate sale exclusion, however, does not require a

"defect" to exclude liability arising from a real estate transaction.  Rather, the

exclusion is worded broadly.  The exclusion provides that there is no coverage for

liability arising out of any "written or oral agreement for the sale or transfer of real

property, *including but not limited to* liability for . . . known or unknown property

or structural defects. "  (Docs. 19-2 at 32, 19-6 at 17 (emphasis added).)  The

phrase "including but not limited to" plainly shows that a "defect" is not a

prerequisite to trigger the exclusion.  Thus, regardless of whether a "defect" is found in the Underlying Lawsuit, the Delavans claims are excluded if they arise out of an agreement for the sale of residence.

The remaining claims in the Second Amended Complaint – Count I (negligence – property damage), Count III (continuing nuisance) and Count V (negligent infliction of emotional distress) – are also likely excluded by the real estate sale exclusion.  In Count I, for example, the Delavans allege that Grieshop owed them a duty "as prospective purchasers of the residential premises at issue in this case, to avoid causing damage to the property," and he breached that duty when he altered the trusses.  (Doc. 19-1 at ¶¶ 30-32.)  Grieshop's alleged duty is therefore based on the Delavan's status as prospective purchasers of the property. Additionally, if no sale occurred, Grieshop would owe no general duty of care to the Delavans in relation to the residence.

In Count III, the Delavans allege the damage to the trusses interferes with their enjoyment of their property.  (*Id.* at ¶¶ 42-47.)  The Delavans' argue their nuisance claim does not solely arise out of the real estate transaction.  They allege Grieshop is liable to them for damaging the trusses before they bought the home, and the negligent remodel is a continuing nuisance.  Yet, without the agreement for the sale of the property, they would have no claim against Grieshop.  The Delavans did not suffer any property damage or injury at the time the trusses were allegedly

damaged since they had no ownership interest in the property.  Rather, any damage the Delavans suffered from the alteration of the trusses arose because of the agreement for the transfer of the property from Grieshop to the Delavans.

Similarly, in Count V it is alleged that Grieshop's conduct caused them to suffer emotional distress, and that their emotional distress "was a reasonably foreseeable consequence of Defendant's negligent acts."  (*Id.* at ¶¶ 56-57.)  But the Delavan's did not suffer emotional distress when the trusses were altered, nor was their emotional distress foreseeable at the time of the alteration.  If not for the sale of the home to the Delavans, they would not have suffered emotional distress, and their emotional distress would not have been a foreseeable consequence of Grieshop's actions.

Nevertheless, the Court must construe the allegations of a complaint in favor of finding the obligation to defend.  But to the extent those counts can be construed to relate to Grieshop's action in conducting the remodel, as opposed to the subsequent sale of the property, the Delavans' claims are also excluded by the "owned property" exclusion.

### 2.    Owned Property Exclusion

The "owned property" exclusion reads in full:

2.    Coverage E—Personal Liability does not apply to:

b.    **property damage** to property owned by an **insured**;

21

        c.    **property damage** to property rented to, occupied or used by or in the care of any **insured**.

(Docs. 37, 47 at ¶ 31, citing 19-2 at 32.)  (Emphasis in original.)

Safeco argues that under the explicit language of this exclusion, Safeco has no obligation to defend or indemnify the Delavans' claims that "he damaged his own home before selling it to the Delavans."  (Doc. 18 at 18.)

The Delavans disagree and assert that the owned property exclusion is ambiguous.  The Delavans also contend that the exclusion does not apply to them as subsequent owners and third-party beneficiaries under the policy.  (Doc. 46 at 24-31.)

Grieshop argues that the exclusion does not apply because he "no longer owns the house and did not own the house when Delavans initially made their claim."  (Doc. 36 at 13.)

Safeco plainly has the better argument, which is supported by several closely analogous cases.  In *Panico v. State Farm Fire and Cas. Co.*, 410 Fed.Appx. 160 (10th Cir. 2011), for example, the Tenth Circuit considered an insureds' (Panicos) claim against State Farm for its refusal to defend an underlying claim.  Like here, the underlying action involved the sale of a home that had been built by the Panicos.  After the sale, the Panicos were sued by the purchaser for, among other things, serious design and construction defects in the home.  State Farm refused to defend the Panicos, and they sued State Farm for breach of the insurance contract.

The district court determined that the claims were not covered by the policy, and the Tenth Circuit agreed.

In so holding, the Tenth Circuit relied in part on an owned property exclusion, which excluded coverage for claims for "property damage to property rented to, occupied or used by or in the care of any insured. . . ." *Id.* at 165. The Tenth Circuit collected cases from other jurisdictions which "have held that an owned property exclusion bars coverage of a home purchaser's negligence claims against the insured."[4]  Then, in determining that the exclusion applied to bar coverage in the case against the Panicos, the Tenth Circuit concluded simply that "[t]he Panicos owned the property at all relevant times, *i.e.*, when the Panicos made the alleged misrepresentations to the [buyers], when the Panicos negligently

---

[4] The Tenth Circuit cited "*Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 585 (6th Cir. 2001) ("[A]ny alleged poor craftsmanship or negligence actually arose while the house was still under construction.  Inasmuch as [the insured] owned the property during the entire construction period and up until the closing, she was the owner at the time the alleged damage occurred.") (applying Kentucky law); *Boggs v. Great N. Ins. Co.*, 659 F.Supp.2d 1199, 1213 (N.D. Okla. 2009) ("If the Boggses' negligence were to have caused any damage to the fireplaces, this damage would have occurred while the Boggses owned the residence." (footnotes omitted)); *Cooley v. State Farm Fire & Cas. Co.*, 2009 WL 3378271, at *4 (E.D. Ark. Oct.16, 2009) (determining that the owned property exclusion applied because the underlying plaintiffs' "allegations clearly relate to defects that arose and/or existed during the time the [insureds] owned and resided in the residence") (applying Arkansas law); *Allstate Ins. Co. v. Chaney*, 804 F.Supp. 1219, 1223 (N.D. Cal. 1992) (determining that the owned property exclusion applied because the misrepresented property damage occurred while the insured owned the property) (applying California law)." *Panico*, 410 Fed.Appx. at *4.

constructed the property, and when the Panico maintained the property.  The

owned property exclusion applied here to bar coverage of the [buyer's] claims

against the Panicos."  *Id.* at 166.

The same straightforward conclusion applies here.  Grieshop owned the

property when he altered the trusses, and allegedly caused the damage which is the

subject of the Delavans' claims.  The owned property exclusion, therefore,

unequivocally bars coverage of the Delavans' claims against Grieshop.

As noted above, however, Grieshop argues that the owned property

exclusion does not apply.  Grieshop asserts that he no longer owns the house and

did not own the house when the Delavans initially made their claim.  (Doc. 36 a

12.)

The Court finds Grieshop's argument unavailing.  The Policies provide

personal liability coverage for suits brought against an insured for property

damages caused by an occurrence.  (Docs. 37, 47 at ¶ 22, citing 19-2 at 29.)

Occurrence is defined as "an accident, including exposure to conditions which

results in … property damage." (*Id.* at ¶ 26, citing 19-2 at 39.)  In turn, "'property

damage' means physical damage to or destruction of tangible property, including

loss of use of this property." (*Id.* at 27, citing 19-2 at 40.)  Thus, property damage

occurs at the time of physical damage.  See e.g., *Swank Enters. v. All Purpose*

*Servs., Ltd.*, 154 P.3d 52, 56 (Mont. 2007); *Northland Cas. Co. v. Mulroy*, 357 F.

Supp. 3d 1045, 1049 (D. Mont. 2019), *aff'd,* 789 F. App'x 60 (9th Cir. 2019).

Therefore, if personal liability coverage existed, it would trigger when property

damage occurred, not when the claim was asserted.

The Delavans plainly allege the damage to the property occurred when

Grieshop altered the engineered trusses.  (Docs. 37, 47 at ¶ 17(b)-(d), citing 19-1 at

¶¶ 9-11.)  It matters not that the Delavans did not discover the problem until after

the transfer of the home.  *Swank*, 154 P.3d at 56 ("the fact that the discovery or

diagnosis of the problem did not occur until after the 1997 policy period is of no

consequence.  A 'physical injury' can occur even though the injury is not

diagnosable, compensable, or manifest during the policy period as long as it can be

determined, even retroactively, that some injury did occur during the policy

period.") (Internal quotations, citations omitted).  Here, the damage for which the

Delavans seek to impose liability occurred when Grieshop owned the home.

The Court also finds the Delavans' remaining arguments against application

of the owned property exclusion similarly unpersuasive.  First, the owned property

exclusion is not ambiguous because the words "property," "property owned," and

"property used" are not defined by the policy.  As set forth above, "[a] court should

interpret terms in an insurance policy according to their usual, common-sense

meaning as viewed from the perspective of a reasonable consumer of insurance

products." *Parker v. Safeco Ins. Co. of Am.*, 376 P.3d 114, 118 (Mont. 2016).  The

Oxford English Dictionary defines "property" as "A (usually material) thing belonging to a person, group of persons, etc.; a possession; (as a mass noun) that which one owns; possessions collectively; a person's goods, wealth, etc." *Property*, Oxford English Dictionary (OED Online. December 2020).  Black's Law Dictionary defines "property" as "[a]ny external thing over which the rights of possession, use, and enjoyment are exercised."  *Property*, Black's Law Dictionary (11th ed. 2019).   In accordance with these commonly understood definitions, a reasonable consumer of insurance products, applying the common-sense meaning of the words, would have no difficulty understanding what would be included within the terms "property" and "property owned" and "property used."  The language of the exclusion is commonly used and understood and does not require a special definition.  The Court should not create an ambiguity where none exists; none exits here.

Moreover, the Tenth Circuit in *Panico*, and the numerous cases cited therein, have applied the exclusion without difficulty.  None of the cases suggest that the exclusion is ambiguous for failing to define what property means.

There is also no merit to the Delavans' argument that they are third-party beneficiaries of the insurance contracts.  Under Montana law, a person cannot assume they are a third-party beneficiary under an insurance contract merely because they benefit from it.  *Diaz v. Blue Cross & Blue Shield*, 267 P.3d 756, 762

(Mont. 2011) ("[T]here is a plain distinction between a promise, the performance of which may benefit a third party, and a promise made expressly for the benefit of a third party."). To be a third-party beneficiary, a person "must be able to 'show from the face of the contract that it was intended to benefit him or her.'" *Id.*; see also, *Hart v. Pacific Source Health Plans*, 2019 WL 4044050 (D. Mont. June 18, 2019). As in *Hart*, the Delavans are not the named insureds under the Policies, which do not mention or identify the Delavans, and there is no indication from the face of the Policies that they were intended to benefit the Delavans in any way.

### B.    Coverage A – Dwelling

The Delavans alternatively contend that there is coverage for the damage to the trusses under the first-party Dwelling Coverage A of the Homeowners Policy. (Doc. 46 at 20-21.) The Delavans assert the Policy was in effect when Grieshop caused the damages, and the fact he has since transferred the property to them is of no consequence. (*Id.* at 21-22.) The Delavans further assert there are no exclusions which would bar coverage under Coverage A. (*Id.* at 22.)

The Delavans, however, do not cite any authority for the proposition that first-party property coverages can benefit a subsequent purchaser, or can create a duty to indemnify the insured for claims that he negligently damaged his property. Moreover, the Delavans do not qualify as "insureds" under Coverage A. The

Policy lists "Matt Grieshop" as the named insured (Doc. 19-2 at 1), and defines the "Insured" as:

> (1) you; and
> (2) so long as you remain a resident of the residence premises, the following residents of the residence premises:
>> (a) your relatives;
>> (b) any other person under the age of 24 who is in the care of any person described in (1) or (2)(a) above.
>
> Anyone described above who is a student temporarily residing away from your residence premises while attending school shall be considered a resident of your residence premises.

(Doc. 19-2 at 39.)  The Policy further provides that "you" and "your" refers to the named insured shown on the Policy Declarations, which is Grieshop.  (*Id.* at 38.) The Delavans do not fall under any of these definitions.

Additionally, as discussed above, the Delavans do not qualify as third-party beneficiaries.  There is no indication that the Policy was intended to benefit the Delavans or any subsequent purchaser of the property in any way.

Therefore, it has been unequivocally shown that the Delavans are not entitled to coverage under Coverage A.

### C.    Umbrella Policy Coverage

Grieshop also contends he is entitled to a defense under the Defense Coverage provision under the Umbrella Policy, regardless of coverage under the Homeowners Policy.  (Docs. 36 at 10; 39 at 4.)  The Personal Liability and Defense Coverage provisions of the Umbrella Policy read:

28

PERSONAL LIABILITY

We will pay the ultimate net loss in excess of the retained limit that the insured is legally responsible for because of covered bodily injury, personal injury or property damage caused by an occurrence.

DEFENSE COVERAGE

When a claim covered by this policy is made against any insured, and such claim is not covered by the insured's underlying insurance stated in the Declarations or by any other underlying insurance available to the insured, we will, subject to the retained limits, defend any suit against  any insured even if it is groundless or fraudulent.  And we will investigate, negotiate and settle on behalf of the insured any claim or suit as we deem appropriate.

(Doc. 19-6 at 14.)

Grieshop argues that the language of the coverage provision only requires that his claim is not covered by his underlying insurance.  (Doc. 39 at 6.)  Grieshop contends that this prerequisite is met because Safeco has disclaimed coverage. (*Id.*)  Grieshop further asserts that the doctrine of reasonable expectations supports his reading of the Defense Coverage provision, citing to *Newman*.  (*Id.* at 6-7.)

Safeco counters that Grieshop ignores the Defense Coverage provision's opening clause, requiring that a claim be covered by the Umbrella Policy first and foremost.  (Doc. 48 at 10-11.)  Safeco argues that since there is no coverage for Personal Liability, it follows that there can be no Defense Coverage.  (*Id.* at 11-12.)

The Court agrees with Safeco.  Because the Court has determined that all of the claims in the Underlying Lawsuit are excluded by the real estate sale and owned property exclusions, the Court has found that the claims are not covered by the Homeowners' Policy and the Umbrella Policy.  Accordingly, the Delavans' claims against Grieshop are not covered by "this policy"; that is, the Umbrella Policy.  As such, Grieshop is not entitled to a defense under the Defense Coverage provision.

Grieshop further argues that coverage should be provided under the Umbrella Policy, because he reasonably expected Safeco would provide a defense if a claim was not covered under the Homeowners Policy.  But as the Montana Supreme Court explained in *Fisher ex rel. McCartney v. State Farm Mut. Auto. Ins. Co.*, 305 P.3d 861, 867 (Mont. 2013), "the reasonable expectations doctrine is inapplicable where the terms of the policy at issue clearly demonstrate an intent to exclude coverage." (Citations omitted.)  "The reason, of course, is that expectations which are contrary to a clear exclusion from coverage are not 'objectively reasonable.'"  *Id.* (internal quotations, citations omitted.)

Here, the Defense Coverage provision contains two clauses.  The first clause reads: "When a claim covered by this policy is made against any insured …" (Doc. 19-6 at 14.)  This language clearly sets the first condition that must be met for the provision to apply.  The second clause reads: "*and* such claim is not

covered by the insured's underlying insurance stated in the Declarations or by any other underlying insurance available to the insured." (*Id.*, emphasis added.) Grieshop's sole focus is on the second clause and ignores the plain language of the provision's opening clause, which only grants coverage for claims that are covered by the Umbrella Policy. Grieshop's reliance on *Newman* is unavailing because the policies at issue there contained explicitly different language. See, *Newman*, 995 F.Supp.2d at 1128, 1133.

Thus, the Court finds that Safeco has unequivocally demonstrated that the claims against Grieshop do not fall within the Umbrella Policy coverage. Safeco, therefore, has no duty to defend Grieshop under the Defense Coverage provision.

### D.    Motion to Stay

The Delavans have also filed a motion to stay pending resolution of the Underlying Lawsuit and relies on this Court's decision in *Bankers Ins. Co. of Florida v. Cameron*, 2020 WL 5645848 (D. Mont. Sept. 22, 2020). In *Cameron,* an insurer brought a declaratory judgment action seeking judgment both on its duty to defend and duty to indemnify its insured in an underlying action. This Court stayed the indemnity portion of the claim pending either disposition of the underlying action or resolution of the duty to defend.

Here, however, the Court has determined that Safeco has no duty to defend. Having determined Safeco has no duty to defend, the Court likewise finds Safeco

has no duty to indemnify.  Generally, "courts must caution against determining questions of indemnity until liability is established in the underlying proceeding." *Am. Reliable Ins. Co. v. Vlieland*, 2018 WL 1582551, *3 (D. Mont. March 30, 2018).  Typically, a claim for declaratory judgment regarding an insurer's duty to indemnify is not ripe until there has been a resolution of the underlying claim.  *Id.* at *3 (finding insurer's motion for summary judgment was "not ripe and justiciable regarding its duty to indemnify" because the underlying state court matter was unresolved); *Nat'l Surety Corp. v. Mack*, 2016 WL 590453, *2 (D. Mont. Feb. 11, 2016) ("Courts must refrain from deciding questions of indemnity until liability is established in the underlying proceeding."); *Yellowstone Dev., LLC v. United Fire & Cas. Co.*, 2011 WL 13077970, *2 (D. Mont. Aug. 11, 2011) (finding claim for declaratory judgment concerning insurer's duty to indemnify was not ripe where the underlying claim remained pending); *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 363 (Mont. 2005).

Nevertheless, because the duty to defend is more extensive than the duty to indemnify, it is possible for the issue of the duty to defend to resolve a premature indemnity issue.  The Montana Supreme Court has noted that "[w]here there is no duty to defend, it follows that there can be no duty to indemnify." *Skinner*, 127 P.3d at 364.  Thus, "a finding that there is no duty to defend necessarily compels the finding that there is no duty to indemnify." *Mack*, 2016 WL 590453 at *2.

32

The Montana Supreme Court recently reaffirmed this rule in *Farmers Ins. Exch. v. Wessel*, 477 P.3d 1101, 1106-07 (Mont. 2020).  There, the district court had found the insurer had no duty to defend but stated the duty to indemnify was not ripe because liability had not yet been determined in the underlying action.  *Id.* at 1106. The Supreme Court reversed, stating that "[a] conclusion that there is no duty to defend compels the conclusion that there is no duty to indemnify."  *Id.* at 1107. Accordingly, because Safeco has no duty to defend, Safeco likewise has no duty to indemnify.

The Court therefore declines Delavans' motion to stay this case pending disposition of the Underlying Lawsuit.

### E.    Attorneys' Fees and Defense Costs

Safeco argues it is entitled to recoup defense costs expended on Grieshop's behalf.  (Doc. 18 at 22.)  Grieshop responds that Safeco's request should be denied on two grounds: first, there is no contractual provision in the Policies allowing recovery of attorney fees and costs, and second, equity does not favor such an award.[5]  (Doc. 36 at 14.)

In *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469 (Mont. 2005), the Montana Supreme Court adopted a two-part test for

---

[5] The Delavans also oppose Safeco's request for reimbursement of fees but have no standing to do so.  The Court, therefore, declines to consider their arguments in this regard.

determining whether an insurer is entitled to reimbursement of defense costs when it has provided a defense to an insured for claims outside of their policy coverage. An insurer must (1) timely and explicitly reserve the right to seek reimbursement, and (2) provide the insured with specific and adequate notice of the possibility of reimbursement. *Ribi*, 108 P.3d at 480; *W. Am. Ins. Co. v. MVP Holdings, LLC*, 2020 WL 6799003, at *4 (D. Mont. Nov. 19, 2020). Such a reservation of rights is "enforceable where an insurer meets these conditions even absent an express agreement by the insured." *Ribi*, at 480.

Under *Ribi*, the Court finds Safeco can recoup the costs of defense. It is undisputed that Safeco sent Grieshop a letter on November 20, 2019 agreeing to defend him in the Underlying Lawsuit but reserving its right to seek reimbursement of defense costs. (Doc. 19-9.) The Underlying Lawsuit was filed on September 12, 2019, and Grieshop tendered the claim to Safeco on October 9, 2019. (Doc. 37 at ¶¶ 3-4; *see* Doc. 1-1.) Thus, within approximately 6 weeks of tendering the claim to Safeco, Grieshop was given explicit notice of Safeco's reservation of rights, which included notice of the right to seek reimbursement. Safeco then reiterated its reservation of rights in subsequent correspondence on January 2, February 4, March 13, and July 16, 2020. (Docs. 19-10; 19-14, 19-15, 19-16.) Each of these letters included specific warnings that Safeco may seek declaratory judgment and the possibility of repayment for defense costs. (*Id.*)

By accepting Safeco's defense, Grieshop agreed to the terms of Safeco's reservation of rights.  See, *Ribi*, 108 P.3d at 480 (citing Restatement (Second) of Contracts § 69 (1981) ("A party cannot accept tendered performance while unilaterally altering the material terms on which it is offered.")).  Under *Ribi*, a reservation of rights is enforceable even in the absence of an express agreement by the insured.  *Id.*; see also, *Am. Econ. Ins. Co. v. Aspen Way Enterprises, Inc.*, 2015 WL 7871337, at *2 (D. Mont. Dec. 4, 2015), aff'd sub nom. *Am. Econ. Ins. Co. v. Hartford Fire Ins. Co.*, 695 F. App'x 194 (9th Cir. 2017) ("… The Court finds that Aspen Way cannot receive the benefit of a defense paid for by Liberty Mutual, only to belatedly object and change the terms upon which the defense was offered.").  Therefore, Grieshop's first argument necessarily fails because he accepted and received benefits from Safeco's defense of the Underlying Lawsuit.

Grieshop's reliance on the Montana Supreme Court's discussion in *Horace Mann*, as well as this Court's analysis in *Banjosa Hosp., LLC v. Hiscox, Inc.*, 2019 WL 1922300 (D. Mont. April 30, 2019), and other cases, for the proposition that equity does not favor reimbursement of attorney fees is also unavailing.  In *Horace Mann*, for example, the Montana Supreme Court discussed an insurer's request for attorney fees incurred in prosecuting a declaratory judgment action against the insured.  *Horace Mann Ins.*, 312 P.3d at 434-436.  Likewise, in *Banjosa*, the issue before this Court was a Rule 54 motion for attorneys' fees incurred in successfully

defending a declaratory judgment action. *Banjosa*, 2019 WL 1922300 at \*1. Neither case is applicable here because Safeco does not seek to recover attorney fees expended in connection with the prosecution of this action.

The Court therefore finds Safeco is entitled to recoup defense costs paid on Grieshop's behalf in the Underlying Lawsuit.

### F.    Grieshop's Counterclaims

Safeco moves for summary judgment on Grieshop's counterclaims for violation of Montana's Unfair Trade Practices Act, Mont. Code Ann. § 33-18-201(6) (Count I); breach of the implied covenant of good faith and fair dealing (Count II); and breach of fiduciary duty (Count III).  (Doc. 18 at 24.)  Grieshop counters that Safeco's motion on his counterclaims is premature, as he is entitled to discovery under Fed. R. Civ. P. 56(d)(1) and (2).  (Doc. 36 at 24.)

Because the Court has found there is no coverage for Grieshop under the Policies, Grieshop's UTPA and bad faith claims necessarily fail. *Truck Ins. Exch. v. O'Mailia*, 343 P.3d 1183, 1188 (Mont. 2015) (holding district court properly summarily dismissed insured's counterclaims for unfair claim settlement practices, bad faith and breach of contract after granting insurer summary judgment that it had no duty to defend or indemnify); *Truck Ins. Exch. v. Waller*, 828 P.2d 1384, 1387 (Mont. 1992).  Likewise, Grieshop's claim for breach of fiduciary duty,

36

which is based on Safeco's request to recoup defense costs, fails as a matter of law in light of the Court's determination that Safeco is entitled to recover those costs.

The Court therefore finds that Safeco is entitled to summary judgment on Grieshop's counterclaims.

## IV.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** as follows:

1.     Grieshop's Unopposed Motion to File Overlength Brief (Doc. 65) is **GRANTED**.

2.     The Delavans' Motion for a Stay in Proceedings (Doc. 57) is **DENIED**.

3.     Safeco's Motion for Summary Judgment (Doc. 17) is **GRANTED**.

4.     Grieshop's Motion for Summary Judgment (Doc. 38) is **DENIED**.

5.     The Delavans' Cross-motion for Summary Judgment (Doc. 45) is **DENIED**.

6.     Safeco is entitled to recover its attorney fees and costs incurred in defending the Underlying Lawsuit.  Safeco may not recover fees and costs incurred in prosecuting this declaratory judgment action.  Safeco is required to comply with the requirements of Fed. R. Civ. P. 54(d) to recoup its expenses but does not need to relitigate the issue of whether attorney fees and costs are recoverable.

/ / /

7.      The Clerk of Court is directed to enter judgment in favor of Safeco.

**IT IS ORDERED**.

DATED this 31st day of March, 2021.

                                _____

                                  TIMOTHY J. CAVAN
                                  United States Magistrate Judge